IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CURTIS MARSDEN,                     )
                                    )   No.  04-1175-HU
            Plaintiff,              )
                                    )
      v.                            )
                                    )   OPINION AND ORDER
SPENCER ABRAHAM, Secretary          )
U.S. Department of Energy,          )
                                    )
            Defendant.              )
_____)

Judy Danelle Snyder
Holly Lloyd
Law Offices of Judy Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
      Attorneys for plaintiff

Karin Immergut
United States Attorney
Britannia I. Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
      Attorneys for defendant

HUBEL, Magistrate Judge:

      Plaintiff Curtis Marsden brought this action against his

employer, Bonneville Power Administration (BPA), a federal agency

OPINION AND ORDER Page 1

of the Department of Energy, asserting claims under the Rehabilitation Act of 1973, 29 U.S.C. § 791, for disability discrimination and failure to accommodate his disability.

Both parties request summary judgment on the issue of whether plaintiff's major depressive disorder constitutes a "disability" as that term is defined in the Rehabilitation Act. Defendant also seeks summary judgment on the issue of whether plaintiff ever requested accommodation for a disability.

### Factual Background

Plaintiff has recurrent major depressive disorder, a chronic condition first diagnosed in 1991. Complaint ¶ 10. He receives treatment for this condition, including therapy and medication. Plaintiff's Affidavit, ¶ 2.

Plaintiff was hired as an Information Technology Specialist at the Transmission Information Systems (TIS) branch of the BPA on August 25, 2002. Complaint, ¶ 6. His unit worked at the Vancouver Ross Complex in Vancouver, Washington. Id. Arlene Miller was plaintiff's technical lead and assigned him his daily work. Id. at ¶ 7. Orla Kirking-Kahl was plaintiff's supervisor. Id. at ¶ 8. Dale Prill was plaintiff's second-level manager. Id. at ¶ 9.

Plaintiff's appointment was subject to the completion of a one-year probationary period. Id. at ¶ 6. When plaintiff was hired, he did not disclose to anyone at BPA that he had depressive disorder. Filer Declaration, Exhibit 3, ¶ 4. Before being hired at BPA, plaintiff had never requested employer accommodation for his depression. Plaintiff's Deposition 36:8-10, Filer Declaration,

OPINION AND ORDER Page 2

Exhibit 5 (hereinafter Plaintiff's Deposition).

On October 4, 2002, plaintiff left work at 3:00 p.m. without informing anyone or submitting a leave slip. Complaint, ¶ 11. Later that day, he was admitted to a hospital for mental health treatment. Id. Plaintiff called Miller from the hospital and left a message that he had been hospitalized and did not know how long he would be there or when he could call again. Id. On October 8, 2002, plaintiff returned to work. Id. However, upon his return to work he did not reveal that he had been hospitalized for depression, and did not request accommodation for that condition. Filer Declaration, Exhibit 3, ¶ 4.

In mid-October, Kirking-Kahl discussed with plaintiff the fact that he had little or no accumulated leave left; she cautioned him to be judicious in his expenditure of it. Deposition of Orla Kirking-Kahl 68:13-20, 70:7-14, Lloyd Affidavit, Exhibit A (hereinafter Kirking-Kahl Deposition).

On November 5, 2002, plaintiff received a performance review from Kirking-Kahl. Id. During the review, Kirking-Kahl again noted plaintiff's use of sick leave and annual leave. Plaintiff disclosed that he suffered from a medical condition that caused him to have a depressed demeanor, for which he was receiving treatment. Id. Plaintiff received a satisfactory rating on his review. Id.

In December 2002, Kirking-Kahl asked plaintiff to send her an email upon arrival and departure from work every day in December, because Miller had complained that plaintiff's arrival and departure times did not correspond to his time sheet. Complaint,

¶ 14.

On May 28, 2003, plaintiff had another performance review. Kirking-Kahl expressed criticisms of plaintiff, among them frequent use of sick leave and falling asleep in meetings. Complaint, ¶ 16. Kirking-Kahl testified at her deposition that she saw plaintiff fall asleep at a meeting. Kirking-Kahl Deposition 135:6-14. Plaintiff told Kirking-Kahl that his medical condition was depression, and that it deprived him of energy and caused memory lapses, periods of "blanking out," which he believed had been mischaracterized as falling asleep in meetings, and tremors in the hand. Id.; see also 111:12-21; Filer Declaration, Exhibit 2, p. 18. However, plaintiff has also acknowledged that he became drowsy and nodded during meetings on three occasions. Filer Declaration, Exhibit 3, p. 9. Plaintiff asked Kirking-Kahl if he could be excused from long, dry meetings where he was not an active participant to avoid the problem of drowsiness, and said he would have his medication adjusted to counter the problem if possible. Complaint, ¶ 17; Filer Declaration, Exhibit 4, p. 7; Plaintiff's Deposition 120:15-20.

On June 23, 2003, plaintiff was terminated from BPA, before expiration of his probationary period. Complaint, ¶ 19. On July 21, 2003, plaintiff filed an informal complaint with the EEO. Id. at ¶ 20. On August 12, 2003, plaintiff submitted a formal complaint to the United States Department of Energy. Id. at ¶ 21. On June 4, 2004, plaintiff received a Final Agency Decision with a Notice of Right to Sue. Id. at ¶ 22.

OPINION AND ORDER Page 4

## Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

As a federal employee, plaintiff's claims are governed by the Rehabilitation Act. The rights, procedures, and remedies of the Rehabilitation Act are coextensive with those of the Americans with Disabilities Act (ADA). 42 U.S.C. 12133; Bragdon v. Abbott, 524 U.S. 624 (1998); see also Ferguson v. City of Phoenix, 157 F.3d 668, 673 (9th Cir. 1998).

To make out a claim for unlawful discharge under the Rehabilitation Act, plaintiff must establish that 1) he is an individual with a disability within the meaning of the statute, 2) able to perform the essential functions of the job with or without reasonable accommodation, 3) who was terminated because of his ///

OPINION AND ORDER Page 5

disability. 29 U.S.C. § 794(a); <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)(ADA).

**Discussion**

The issue before the court on these motions is whether plaintiff has established that he is an individual with a disability within the meaning of the Rehabilitation Act. Defendant contends that he has not, because plaintiff has not identified a major life activity that is substantially impaired by his depression. Plaintiff contends that his depression does impair several major life activities, including sleeping, eating, caring for himself, performing daily tasks, cognitive functions, and interaction with others.

An individual has a disability if he has a physical or mental impairment which substantially limits one or more major life activities. 29 C.F.R. § 1630.2(g). The implementing regulations for the ADA expand upon the statutory definition. Under them, an impairment is substantially limiting if it "significantly restricts as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, [and] learning..." <u>Id.</u> at 1630.2(i). In addition, the regulations enumerate the following factors that should be considered in determining whether an

OPINION AND ORDER Page 6

individual is substantially limited in a major life activity: 1) the nature and severity of the impairment; 2) the duration or expected duration of the impairment; and 3) the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment. Id. at § 1630.2(j)(2).

A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that "substantially limits" a major life activity. Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999).

Defendant asserts that plaintiff cannot carry his burden of proving that he has a disability because his own pleadings, statements to the EEO, deposition testimony, and responses to interrogatories establish that he is not substantially limited in a major life activity, that to the extent he has an impairment, it is corrected or mitigated by medication, and that he worked for many years without accommodation.

In his complaint, plaintiff alleges that his condition "substantially impairs one or more ... major life activities, including sleeping, eating, caring for himself, performing daily tasks, cognitive functions, and interaction with others." Complaint ¶ 10.

At plaintiff's deposition, defendant's counsel announced that he was going to "go through several major life activities" and ask plaintiff about his ability to engage in them. Plaintiff's Deposition 94:7. In response to defense counsel's questions, plaintiff acknowledged that he was able to care for himself, *i.e.*,

buy groceries, wash clothes, brush his teeth, and eat meals, although he said he would often skip eating without being aware of it when he was severely depressed. Id. at 94-97. In response to further questioning, plaintiff acknowledged that he was able to perform manual tasks, walk, see, eat, hear, speak, and breathe except for episodic hyperventilation, during an anxiety episode. Id. Plaintiff testified that he has a "lot of trouble" sleeping, for which he takes medication; when he takes the medication he is able to sleep. Id.

Plaintiff testified that he had problems concentrating while he was employed at BPA, but that they were atypical and did not affect his ability to work:

> A: Concentrating and keeping my focus was something that was a problem during that time. I noticed it in contrast to what [sic] traditionally I have had a very strong developed ability to focus and keep my concentration--unbroken concentration really and follow through on what I am doing. And during this time--I couldn't stay focused on what I was doing. It was hard.

> Q: Are you able to write the programs?

> A: Yes, but there would be a lot of times where I would be looking at a screen and it was kind of like I spaced out for a second. And then I'd look back at the screen and say, "What was I— what was I just doing? ... But it never prevented me from getting things done by the deadlines that were given to me. Had I not had that issue I certainly would have gotten done things [sic] more quickly. ... [B]ut I don't believe that it resulted in there being an increase in the number of errors.

Id. 99:4-17, 99:20-22, 99:25, 100:1-5. Asked whether his depression affected his ability to perform the duties of his position, plaintiff responded:

> A: I don't believe it did. I got all my work done. I

OPINION AND ORDER Page 8

got it done within the time frame that was allowed
me. I received multiple commendatory comments in
the forms of emails and phone calls from the people
in Logistics.

Id. 119:2-6.

Plaintiff testified that he was first diagnosed with major depressive disorder in 1991, but that he was not restricted, by the illness itself or by the medication he takes, from performing any tasks or from anything else except that he had been told by one doctor to avoid highly stressful situations. Plaintiff's Deposition 93:9-22. He has never received assistance or benefits as a result of his illness. Id. 94:1-3.

Defendant argues that this testimony proves that during the time he worked at BPA, plaintiff was not substantially limited in the major life activity of working.

Further, defendant points to other deposition testimony from plaintiff indicating that, with medication, his depression was largely controlled:

    Q:    When you take medications, are you able to control
          the problems you have that you've told me about?

    A:    It doesn't completely eliminate them, but it helps
          significantly.

    Q:    Could you give me a percentage of the time that the
          impairments are under control?

    A:    Well, more than a percentage of the time, I would tend to
          qualify it as a percentage of control overall. Like if,
          you know, a ten is I'm completely happy and one is
          suicidal, you know, with these medications it helps keep
          me at about a seven.

Id. 105:15-25, 106:1. Defendant argues that under Sutton, plaintiff is not substantially limited by his depression because it is

OPINION AND ORDER Page 9

correctable with medication.

In response to defendant's motion, plaintiff has submitted an affidavit in which he states that he has experienced approximately five severe depressive episodes since 1991. In 1991, the episode lasted about a year; in 1997, an episode lasted about a year and a half; an episode which began in 2001 extended into the period of his employment with BPA, lasting approximately two years; immediately after his termination from BPA in June 2003, the episode lasted about one and a half years. The most recent episode began in May 2005 and continues. Plaintiff's Affidavit ¶ 4. Each severe episode "tends to be more severe than the previous episode and tends to occur after a shorter interval." <u>Id.</u> Between the severe episodes, plaintiff has chronic depression and generalized anxiety, for which he takes medication on an as-needed basis. <u>Id.</u> at ¶ 5. Even between severe episodes of depression, plaintiff states that he continuously suffers from difficulty sleeping and eating, interacting with others, performing daily tasks such as household chores, and impaired cognitive functions, particularly memory. Plaintiff's Affidavit ¶¶ 3, 5.

Plaintiff states that as a result of his depression, he experiences a "constant state of mental, self-inflicted torment that drains me [sic] from the ability to enjoy life." <u>Id.</u> at ¶ 3. He experiences anxiety, feelings of hopelessness, low self esteem, and guilt, as well as a "frequent inability to control my emotional reactions to things in an appropriate manner." <u>Id.</u> It is "fairly common" for him to overreact to events and become obsessive in

dwelling on them. Id.

Plaintiff states in his affidavit that he continues to take a variety of medications to keep him in a "maintenance mode which my doctors still feel needs to be improved upon." Id. at ¶ 5. However, even between full-fledged episodes of depression, in addition to generalized anxiety, plaintiff suffers continuously from difficulty sleeping and withdrawing from people he perceives as being the source of stressful situations. Id. Plaintiff states in his affidavit that there "continues to be a correspondence between my cognitive functions, memory in particular, and the degree to which I feel in state [sic] of anxiety and depression. ..." Id.

Plaintiff states that his difficulty sleeping is manifested by insomnia, so that he cannot fall asleep until early morning and is constantly waking up. Plaintiff's Affidavit ¶ 6. When experiencing a severe depressive episode, "the sleeping medication helps, but falls far short of eliminating the problem." Id. During episodes of severe depression he still "virtually always" remains awake until sunrise, getting only two to five hours of sleep. Id. He states that there have been at least two dozen occasions where he was unable to fall asleep at all, and went for almost 36 hours without sleep. Id. He states that he also experiences dreams and nightmares that "can constantly wake me up, on an average of three times a week," and that his wife has had to wake him on over a dozen occasions "where I am screaming in my sleep." Id. He frequently, even during times outside severe episodes, wakes up "more exhausted than before I went to sleep." Id. The frequency of the problem

"approximately doubles during a severe episode." Id. Plaintiff states that from mid-2001 through the period of his employment at BPA, he got very little sleep each night. Id. He states that as a result of his problems with sleeping, he often experiences daytime drowsiness, which can "also be aggravated by my medication." Id. According to the affidavit of plaintiff's father, Fred Marsden, plaintiff was often awake and sitting at his computer at two or three o'clock in the morning. Declaration of Fred Marsden, ¶ 6.

According to plaintiff's affidavit, during depressive episodes, he loses his appetite and does not eat, until he becomes "so light-headed, especially when getting up out of my chair, that I literally stumble and cannot walk in a straight line." Id. at ¶ 7. Even at those times when he does eat, he states, "the act of eating is not enjoyable;" although "[l]iquids seem to retain some appeal ... solids do not." Id. He states that during the severe episode coinciding with his divorce and his employment with BPA, he lost about 40 pounds during a three-month period. Id.

Plaintiff states that depression also affects his cognitive abilities, and has caused him to lose "significant spans of time." Id. at ¶ 8. He states that during a major depressive episode in 1991, he remembers "probably less than about 5% of the things that happens [sic] during a contiguous 4-month period." Id. He states that during the entire time he was employed with BPA, his memory loss became more pronounced, causing him to have increased difficulty remembering things on a day to day basis. Id. He also experienced trouble concentrating and staying focused during that

OPINION AND ORDER Page 12

time. Id. Plaintiff states that it is not uncommon for him to "blank out" for a period of several seconds, "as if I become catatonic for a moment lasting several seconds, during which I am unable to respond to others or even really be aware of them." Id. During these periods of "blanking out" whatever he was thinking about is lost and he has to "struggle to regain the memory of what I was just doing or saying." Id. This "blanking out" can occur in mid-sentence, and is more pronounced during a major episode. Id. Although he was taking Welbutrin and Zoloft, the medications were not effective in reducing his symptoms during the severe episode of October 2002, and he still suffered from suicidal ideation, depression and anxiety. Id. at ¶ 13.[1]

Plaintiff states in his affidavit that he experiences social withdrawal as a result of his depression, avoiding interacting with others or going out in public. Id. at 9. He states that he does not feel he has "the energy to engage other people and that whatever I say to them is a waste of effort because the content will be utterly meaningless ... given my state of hopelessness and feeling of futility about life." Id. He states that his depression also "substantially impacts" his ability to interact with others. Id. He constantly makes an effort to avoid interacting with people who are

_____

[1] Dr. Lin's notes indicate that the severe episode which triggered plaintiff's October 2002 hospitalization was preceded by plaintiff's having forgotten to take his medication, and that when he did remember to take it, he "encountered immediate benefit and relief." Lin Declaration, Exhibit B, p. 25.

not family members. _Id._ He does most things alone and rarely spends time with anyone outside the family. _Id._

Plaintiff states in his affidavit that his depression also interferes with his ability to perform daily household tasks, such as housework, laundry, dishes, and caring for the yard. _Id._ at ¶ 10. During his employment at BPA, his father was staying with him three days a week, doing his laundry, cleaning his house, and bringing food that plaintiff could not eat. _Id._ at ¶ 10.

Plaintiff states that he has taken various medications for his depression, and that the medications "have helped with the symptoms of my depression, but they have never completely eliminated the symptoms I experience." _Id._ at ¶ 11. The medication does not prevent severe depressive episodes, and it has also "caused or contributed to symptoms of depression." _Id._

Plaintiff states that when he first began working at BPA in August 2002, he was experiencing a severe depressive episode, the result of a recent divorce, being laid off from a job, relocating, starting a new job, buying a new home, and "issues with my girlfriend." _Id._ at ¶ 12. He states that after his discharge from the hospital in October 2002, he continued to experience suicidal ideation, insomnia and sleep disturbance, anxiety, and low energy. _Id._

In October 2002, he was taking Wellbutrin and Zoloft. _Id._ at ¶ 13. While these medications "generally help reduce the symptoms I experience, they were not effective in reducing my depression and anxiety during the severe depressive episode in October 2002, nor

OPINION AND ORDER Page 14

did they prevent it from occurring." Id.

In reply, defendant argues that plaintiff has improperly attempted to contradict his sworn deposition testimony with a later, inconsistent declaration. See Disc Golf Ass'n, Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1008 (9th Cir. 1998).

The court may disregard sham affidavits that contradict deposition testimony, and are submitted to generate an issue of fact. Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266-67 (9th Cir. 1991). However, the party opposing a motion for summary judgment is not precluded from elaborating upon, explaining or clarifying prior testimony; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an affidavit. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

Defendant argues that plaintiff's affidavit goes beyond elaborating, explaining, or clarifying deposition testimony, seeking instead directly to contradict plaintiff's previous statements that his medications helped significantly to control the symptoms of his depression; that he was able to perform household tasks such as buying groceries and doing laundry; that he was able to eat except for skipping meals during a severe episode; and that he was able to sleep with medication. Defendant also points to other evidence proffered by plaintiff which contradicts statements made in the affidavit, such as the notation by his treating psychiatrist, Dr. Lin, that on October 18, 2002, a few days after plaintiff was hospitalized for a severe episode of depression,

OPINION AND ORDER Page 15

plaintiff had reported that "[a]ppetite and sleep are OK."
Declaration of Margaret Lin, M.D., Exhibit B, p. 19.

Defendant also cites to deposition testimony in which plaintiff describes 1) supervising other people and acting as a team leader during earlier employment situations;[2] 2) having a roommate who was a BPA co-worker from September 2002 to September 2004;[3] 3) consulting not only mental health professionals, but also medical practitioners for bursitis, high blood pressure, and high cholesterol, and having dental work done;[4] 4) assisting his mother with her surgery;[5] 5) buying a house and moving from Olympia to Vancouver, Washington,[6] and 6) going to movies with friends.[7] Defendant argues that all this evidence directly contradicts plaintiff's affidavit testimony that he avoids interacting with others, has no energy to engage other people, does most things by himself and rarely sees people outside the family, and has

---

[2] Plaintiff's Deposition 16:9-17 (project coordinator with AMGEN); 18:23-19:1(supervising two people at Born Information Services in 1997); 28:5-6, 29:16-18 (head of development team at Global Enterprise Solutions in 1999); 31:16-18 (senior project manager at Illuminette in 2001).

[3] Plaintiff's Deposition 51:18-23.

[4] Id. 144:7-25.

[5] Id. 148:5-11.

[6] Id. 148:20-22.

[7] Id. 101:23-25, 102:3-9.

cognitive difficulties, trouble remembering things, and difficulty performing daily tasks such as household chores.

Plaintiff argues that his affidavit does not contradict, but supplements and adds detail to, his deposition testimony, which he is permitted to do. See, e.g., <u>Messick v. Horizon Indus. Inc.</u>, 62 F.3d 1227 (9th Cir. 1995); <u>Garrett v. Federal Express Corp.</u>, 2005 WL 773757 (D. Or. 2005).

Plaintiff testified at his deposition that he was able to buy groceries, do laundry, and eat meals except for missing meals without being aware of it when severely depressed. Dr. Lin's notes indicate that plaintiff reported to her in October 2002 that sleeping and appetite were "OK." This evidence seems inconsistent with plaintiff's statements in his affidavit that during the acute episode in October 2002, he lost 40 pounds and his father had to throw away food that had gone uneaten.

Plaintiff testified to working in supervisory jobs in 1999 and 2001. However, according to plaintiff's affidavit, he was in the midst of severe, prolonged episodes of acute depression in 1999 and 2001. Plaintiff's testimony about working as a supervisor or team leader seems inconsistent with his statements in the affidavit that he constantly makes an effort to avoid interacting with others, and that he does not have the energy to engage other people. His references in his deposition to seeing movies with friends seems inconsistent with his statement in the affidavit that he does most things by himself and rarely spends time with anyone outside the family.

OPINION AND ORDER Page 17

Although plaintiff has testified in his affidavit that he "lost significant spans of time" because of depression, remembering less than 5% of the things that happened during a four-month period in 1991, and having the memory loss become "more pronounced" while he was at BPA, his deposition testimony was that concentration and memory problems at BPA were "in contrast to" his previous "very strong developed ability to focus and keep my concentration--unbroken concentration really and follow through on what I was doing." Plaintiff's Deposition 99:4-17. Plaintiff also testified at his deposition that his periods of "spacing out" while at BPA lasted a matter of seconds, and did not affect his ability complete his work in a timely manner and with "multiple commendatory comments." Id. 119:2-6.

Plaintiff testified at his deposition that during the time he was employed at BPA, he was able to attend to medical and dental appointments, buy a house, move, and care for his convalescing mother. This testimony indicates that plaintiff's memory impairments and inability to concentrate did not substantially limit his ability to engage in activities requiring concentration and remembering, such as buying a house, caring for a convalescing parent, and making and keeping appointments.

Upon consideration of this evidence, I conclude that although plaintiff's affidavit may present ample opportunities for potentially effective cross-examination, for its contrast with the deposition testimony, the affidavit is not sufficiently directly contradictory to justify disregarding it.

Defendant has requested summary judgment on the issue of accommodation, contending that because plaintiff did not request accommodation, BPA had no obligation to engage him in interactive dialogue.

Plaintiff has alleged that BPA "failed to engage in the interactive process with [him] after learning that [he] suffered from a disability and requested accommodation..." Complaint, ¶ 1. BPA argues that plaintiff did not request any type of accommodation when he was hired and did not request an accommodation during the June 23, 2003 meeting in which he was notified of his termination. BPA argues that plaintiff's disclosure at the May 28, 2003 meeting that he suffered from depression and his request that he be excused from dull meetings because his medication made him drowsy, was occasioned by plaintiff's realization that he was in danger of losing his job, and even then this was not enough to constitute a request for accommodation.

Plaintiff argues that BPA's obligation to engage in the interactive process was mandated by his disclosure at the May 28, 2003 meeting with Kirking-Kahl and request to be excused from meetings. Plaintiff argues that Kirking-Kahl made no inquiries about plaintiff's medical condition, or need for accommodation, at that meeting.

Generally, the interactive process "is triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1112 (9th Cir. 2000)

*vacated on other grounds,* 535 U.S. 391 (2002). The employer should initiate the reasonable accommodation process without being asked if the employer: "(1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." <u>Id.</u> (internal quotation omitted). As the court explained in <u>Humphrey v. Memorial Hospitals Ass'n</u>, 239 F.3d 1128, 1137-38 (9th Cir. 2001):

> Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. <u>Barnett v. U.S. Air</u>, 228 F.3d 1105, 1114 (9th Cir. 2000). "An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." <u>Id.</u> at 1115. The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. <u>Id.</u> at 1114-15; <u>Beck v. University of Wis. Bd. of Regents</u>, 75 F.3d 1130, 1135 (7th Cir. 1996) ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith."). Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. <u>Barnett</u>, 228 F.3d at 1116.

As to what constitutes good faith participation in the interactive process regarding an accommodation, one court has stated that "[e]mployers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the

employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 317 (3d Cir. 1999).

Plaintiff has presented evidence sufficient to create a fact question for the jury on whether BPA had an obligation to engage in the interactive process with plaintiff to determine whether accommodation for plaintiff's depression was necessary.

I conclude that genuine issues of fact exist on the issue of whether satisfies the definition of disability, and on the issue of whether BPA had an obligation to engage in the interactive process with plaintiff. Accordingly, both parties' motions for summary judgment (doc. ## 20, 25)are DENIED.


IT IS SO ORDERED.


Dated this 28th day of <u>October</u>, 2005.


<u>/s/   Dennis James Hubel</u>

Dennis James Hubel
United States Magistrate Judge

OPINION AND ORDER Page 21